**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Bedly Inc.,

                          Plaintiff,

              v.

Bungalow Living, Inc. and Jamil Karriem,

                          Defendants.

No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Bedly Inc. ("Bedly"), by and through its undersigned counsel, The Ottinger Firm, P.C., upon knowledge with respect to its own actions and on information and belief as to all other matters, for its complaint states and alleges as follows:

### Nature of the Action

1.     Bedly brings this action to prevent Defendants Jamil Karriem ("Karriem") and Bungalow Living, Inc. ("Bungalow") from continuing their wrongful possession and use of Bedly's significant and highly confidential information and trade secrets.

### Jurisdiction and Venue

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 as this case is brought under the Defendant Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq.*  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because such claims are so closely related to Bedly's claim for misappropriation of trade secrets under the DTSA that they form part of the same case or controversy.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Bedly has a place of business situated within this judicial district and the violations which gave rise to these claims primarily occurred in this District.

**The Parties**

4.      Plaintiff Bedly is a Delaware Foreign Business Corporation with its principal place of business in New York City, New York at 126 East 39th Street, New York, NY 10016.

5.      Upon information and belief, Defendant Karriem is an individual resident of New York State living at 144 North 17th Street, Brooklyn, NY 11211-2920.

6.      Defendant Bungalow is a Delaware Foreign Business Corporation with its principal place of business in San Francisco, California, at 1 Letterman Drive, San Francisco, California 94109.

**Relevant Facts**

A. **Bedly**

7.      Bedly is a technology enabled property management company creating a new living experience for renters.  Bedly's website grants customers around the world easy access to pre-furnished, move-in ready living spaces on flexible terms.

8.      Bedly has separated itself from its competitors by investing significant time and resources into creating and developing, among other things, unique technical data sets, know-how, formulas, agreements with third parties and living space management processes (collectively, "Trade Secrets").

9.      Bedly's Trade Secrets are actual, tangible things not available to the public or its competitors.

2

10.     Bedly derives significant monetary value through the possession and use of its Trade Secrets.

11.     Bedly undertakes great effort to keep its Trade Secrets protected and confidential. Among other things, Bedly requires its employees, as a condition of their employment, to execute a written Offer of Employment with Bedly Inc. (herein, the "Offer") and Confidential Information and Invention Assignment Agreement (herein, the "CIIAA").

12.     The Offer and CIIAA expressly affirm in multiple sections that Bedly vigorously protects the confidential nature of its Trade Secrets.

13.     Bedly has also implemented day-to-day methods of electronic security to protect its Trade Secrets from the outside world, including but not limited to unique passwords and two-step verifications.

14.     Further, upon termination of an employee's employment, Bedly provides each individual with a confidential separation agreement (herein, the "Separation Agreement").

15.     The Separation Agreement, in exchange for good and valuable consideration not otherwise due, gives each individual the election to reaffirm their obligations under the Offer and CIIAA and to return all Bedly company property by the close of business on the date of separation.

**B.  Karriem's Employment & Separation Agreement**

16.     On December 27, 2017, Bedly offered and Karriem accepted employment with Bedly.

17.     Karriem, as a condition of accepting and maintaining employment with Bedly, was required to and did execute contracts protecting Bedly's company property, confidential information and Trade Secrets (*i.e.*, the Offer and CIIAA).  *See* Exhibit A.

3

18.     Karriem executed both the Offer and the CIIAA on December 27, 2016.  *See* Exhibit A.

19.     The Offer reads, in relevant part: "As a Company employee, you will be expected to abide by all Company policies and procedures, and sign and comply with the Company's standard employee proprietary information and inventions agreement, attached as Exhibit A, which prohibits unauthorized use or disclosure of Company confidential information or the confidential information of the Company's clients."  *See* Exhibit A, Offer, Page 2.

20.     The CIIAA reads, in relevant part:

(a)     **Protection of Information**. Consultant understands that during the Relationship, the Company intends to provide Consultant with information, including Confidential Information (as defined below), without which Consultant would not be able to perform Consultant's duties to the Company. Consultant agrees, at all times during the term of the Relationship and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company to the extent necessary to perform the Services, and not to disclose to any person, firm, corporation or other entity, without written authorization from the Company in each instance, any Confidential Information that Consultant obtains from the Company or otherwise obtains, accesses or creates in connection with, or as a result of, the Services during the term of the Relationship, whether or not during working hours, until such Confidential Information becomes publicly and widely known and made generally available through no wrongful act of Consultant or of others who were under confidentiality obligations as to the item or items involved. Consultant further agrees not to make copies of such Confidential Information except as authorized by the Company.

(b)     **Confidential Information**. Consultant understands that "Confidential Information" means information and physical material not generally known or available outside the Company and information and physical material entrusted to the Company in confidence by third parties. Confidential Information includes, without limitation: (i) Company Inventions (as defined below); and (ii) technical data, trade secrets, know-how, research, product or service ideas or plans, software codes and designs, algorithms, developments, inventions, patent applications, laboratory notebooks, processes, formulas, techniques, biological materials, mask works, engineering designs and drawings, hardware configuration information, agreements with third parties, lists of, or information relating to, employees and consultants of the Company (including, but not limited to, the names, contact information, jobs, compensation, and expertise of such employees and consultants), lists of, or information relating to, suppliers and customers (including, but not limited to, customers of the Company on whom Consultant called or with whom Consultant became acquainted during the Relationship), price lists, pricing methodologies, cost data, market share data, marketing plans, licenses, contract information, business plans, financial forecasts, historical financial data, budgets or other business information disclosed to Consultant by the Company either directly or indirectly, whether in writing, electronically, orally, or by observation.

(c)     **Third Party Information**. Consultant's agreements in this Section 3 are intended to be for the benefit of the Company and any third party that has entrusted information or physical material to the Company in confidence. Consultant further agrees that, during the term of the Relationship and thereafter, Consultant will not improperly use or disclose to the Company any confidential, proprietary or secret information of Consultant's former clients or any other person, and Consultant agrees not to bring any such information onto the Company's property or place of business.

(d)     **Other Rights**. This Agreement is intended to supplement, and not to supersede, any rights the Company may have in law or equity with respect to the protection of trade secrets or confidential or proprietary information.

21.     The CIIAA further reads in relevant part:

5.     **Company Property; Returning Company Documents**. Consultant acknowledges and agrees that Consultant has no expectation of privacy with respect to the Company's telecommunications, networking or information processing systems (including, without limitation, files, e-mail messages, and voice messages) and that Consultant's activity and any files or messages on or using any of those systems may be monitored or reviewed at any time without notice. Consultant further agrees that any property situated on the Company's premises and owned by the Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice. Consultant agrees that, at the time of termination of the Relationship, Consultant will deliver to the Company (and will not keep in Consultant's possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, laboratory notebooks, materials, flow charts, equipment, other documents or property, or reproductions of any of the aforementioned items developed by Consultant or Consultant's personnel pursuant to the Relationship or otherwise belonging to the Company, its successors or assigns.

22.     The CIIAA further reads in relevant part:

8.     **Solicitation of Employees, Consultants and Other Parties**. As described above, Consultant acknowledges and agrees that the Company's Confidential Information includes information relating to the Company's employees, consultants, customers and others, and that Consultant will not use or disclose such Confidential Information except as authorized by the Company. Consultant further agrees as follows:

(a)     **Employees, Consultants**. Consultant agrees that during the term of the Relationship, and for a period of twelve (12) months immediately following the termination of the Relationship for any reason, whether with or without cause, Consultant shall not, directly or indirectly, solicit, induce, recruit or encourage any of the Company's employees or consultants to terminate their relationship with the Company, or attempt to solicit, induce, recruit, encourage or take away employees or consultants of the Company, either for Consultant or for any other person or entity.

(b)     **Other Parties**. Consultant agrees that during the term of the Relationship, Consultant will not negatively influence any of the Company's

clients, licensors, licensees or customers from purchasing Company products or services or solicit or influence or attempt to influence any client, licensor, licensee, customer or other person either directly or indirectly, to direct any purchase of products and/or services to any person, firm, corporation, institution or other entity in competition with the business of the Company. In addition, Consultant acknowledges that the Company has valuable Trade Secrets (as defined by applicable law from time to time) to which Consultant will have access during the term of the Relationship. Consultant understands that the Company intends to vigorously pursue its rights under applicable Trade Secrets law if, during a period of twelve (12) months immediately following the termination of the Relationship for any reason, whether with or without cause, Consultant solicits or influences or attempts to influence any client, licensor, licensee, customer or other person either directly or indirectly, to direct any purchase of products and/or services to any person, firm, corporation, institution or other entity in competition with the business of the Company. Thereafter, the Company intends to vigorously pursue its rights under applicable Trade Secrets law as the circumstances warrant.

23.     Karriem's position as the Head of Business Development required he be provided with routine, unlimited access to Bedly's confidential information and Trade Secrets.

24.     Karriem was provided a laptop at Bedly's expense for the purposes of carrying out his duties.  Karriem was required to and did routinely access and store Bedly's confidential information and Trade Secrets on the laptop.  Karriem did in fact use the laptop to carry out his duties.

25.     Karriem also chose to use his personal smartphone to access and store Bedly's confidential information and Trade Secrets.

26.     Karriem's routine access to Bedly's confidential information and Trade Secrets was a critical part of his job.  Along with Karriem's access to Bedly's confidential information and Trade Secrets, Karriem was personally introduced to Bedly's key third party relationships (*e.g.*, Property Owners, Vendors, Service Providers, etc.)

27.     Bedly fully complied with all duties and obligations under both the Offer and the CIIAA.

28.     Despite Bedly's hopes for Karriem as Bedly's Head of Business Development, Karriem failed to perform his duties to the level expected of a person in his role.  For example,

Karriem's personal behavior created a toxic culture for his co-workers and direct reports.  Bedly

fielded numerous complaints about Karriem's personal behavior from other Bedly employees.

29.     Bedly terminated Karriem as the Head of Business Development due to his failure

to perform on March 6, 2018.

30.     Karriem voluntarily elected to sign Bedly's Separation Agreement in exchange

for good and valuable consideration he otherwise would not have been entitled to receive (*See* Exhibit B).

31.     The Separation Agreement is a valid, binding contract entered into by Bedly and

Karriem.

32.     The Separation Agreement reads, in relevant part:

> 7.     **Return of Company Property**. By the close of business on the
> Separation Date, you agree to return to the Company all Company documents
> (and all copies thereof) and other Company property which you have in your
> possession or control, including, but not limited to, Company files, notes,
> drawings, records, plans, forecasts, reports, studies, analyses, proposals,
> agreements, financial information, research and development information, sales
> and marketing information, customer lists, prospect information, pipeline reports,
> sales reports, operational and personnel information, specifications, code,
> software, databases, computer-recorded information, tangible property and
> equipment (including, but not limited to, computers, facsimile machines, mobile
> telephones, servers), credit cards, entry cards, identification badges and keys; and
> any materials of any kind which contain or embody any proprietary or confidential
> information of the Company (and all reproductions thereof in whole or in part).
> You agree that you will make a diligent search to locate any such documents,
> property and information by the close of business on the Separation Date. If you
> have used any personally owned computer, server, or e-mail system to receive,
> store, review, prepare or transmit any Company confidential or proprietary data,
> materials or information, within fifteen (15) business days after the Separation
> Date, you shall provide the Company with a computer-useable copy of such
> information and then permanently delete and expunge such Company confidential
> or proprietary information from those systems; and you agree to provide the
> Company access to your system as requested to verify that the necessary copying
> and/or deletion is done. Your timely compliance with this paragraph is a condition
> precedent to your receipt of the severance benefits provided under this
> Agreement.
>
> 8.     **Proprietary Information Obligations**. You acknowledge and reaffirm
> your continuing obligations under your Proprietary Information and Inventions
> Agreement, a copy of which is attached hereto as Exhibit A.

33.     Bedly fully complied with all duties and obligations under the Offer, CIIAA and

Separation Agreement.

34.     Karriem materially breached his duties and obligations under the Offer, CIIAA and Separation Agreement.

**C.  Bungalow's Interest in Bedly**

35.     Through hard work and the expenditure of great resources, Bedly has become an industry leader in the New York City market.

36.     Bedly's status as an industry leader in New York City captured the interest of Bungalow – a direct competitor based out of San Francisco who does not have the same New York City market presence - as a potential target for acquisition.

37.     Upon information and belief, Bungalow's desire to acquire Bedly was driven by Bedly's Trade Secrets.

38.     Bungalow and Bedly were engaged in early stage acquisition conversations up until approximately June 6, 2018.

39.     Bedly did not share or grant Bungalow access to its Trade Secrets at any time before, during or after the acquisition conversations.

**D.  Karriem's Breach and Employment with Bungalow.**

40.     Karriem knowingly maintained and refused to return Bedly's company property, confidential information and Trade Secrets after the termination of his employment.  Karriem, among other things, kept the laptop which contains Bedly's confidential information and Trade Secrets.  Upon information and belief, Karriem also kept the smart phone which contains Bedly's confidential information and Trade Secrets.

41.     Bungalow hired Karriem as Bungalow's Director of Business Development after Bedly terminated his employment, and Bungalow continues to employ Karriem as of the date of this filing.

8

42.    Karriem made Bungalow aware of the contractual and common law obligations he owed to Bedly during his Bungalow hiring process.

43.    Upon information and belief, Bungalow wrongfully solicited, encouraged and induced Karriem to violate his contractual and common law obligations to Bedly for the purpose of obtaining Bedly's company property, confidential information and Trade Secrets.

44.    Bungalow had actual knowledge that Karriem owed Bedly contractual and common law duties to refrain from providing Bedly's company property to any other party and to refrain from Bedly's disclosing confidential information and/or Trade Secrets to any other party, including but not limited to Bungalow.

45.    Upon information and belief, Karriem did in fact disclose, and Bungalow did in fact obtain, Bedly's company property, confidential information and Trade Secrets.  Upon information and belief, Bungalow obtained Bedly's Trade Secrets by encouraging, soliciting and inducing Karriem to disclose Bedly's Trade Secrets to Bungalow without permission – express, implied or otherwise.

46.    Without providing Bedly a reason or justification, Bungalow cut off all communications with Bedly regarding an acquisition after hiring Karriem.

47.    Upon information and belief, Bungalow willfully and wantonly ignored its actual knowledge of the wrongful nature of its actions to acquire an unfair advantage by obtaining Bedly's company property, confidential information and Trade Secrets without having to acquire Bedly at a fair market price.

48.    Upon information and belief, Bungalow is using Bedly's Trade Secrets to unfairly compete and steal Bedly's hard earned market share.

49.     The direct and proximate result of impermissibly obtaining Bedly's Trade Secrets was the cessation of all communications related to Bungalow acquiring Bedly.

50.     On Friday June 8, 2018, Bedly, through undersigned counsel, sent Bungalow a Cease & Desist letter.

51.     On Friday June 15, 2018, Bungalow, through their counsel, arranged for and delivered Bedly's company laptop, containing Bedly's confidential information and Trade Secrets, to Bedly's undersigned counsel.

52.     Upon information and belief, Bungalow and Karriem continue to maintain in their possession Bedly's company property, confidential information and Trade Secrets,

53.     Upon information and belief, Bungalow and Karriem continue to wrongfully use Bedly's company property, confidential information and Trade Secrets for their own economic benefit and to Bedly's detriment.

## FIRST CAUSE OF ACTION
### (Breach of Contract against Defendant Karriem)

54.     Bedly alleges and incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

55.     The Offer, CIIAA and Separation Agreement (herein, the "Contracts") all are valid, binding contracts between Bedly and Karriem containing enforceable covenants and obligations.

56.     Bedly fully performed all of its duties and obligations under the Contracts.

57.     The Contracts impose upon Karriem certain contractual obligations as described above.

58.     By the acts described above, Karriem breached the contractual obligations and restrictive covenants of the Contracts.

59.     If Karriem is not enjoined from continuing to breach the contractual obligations and restrictive covenants, including but no limited to continuing to work for Bungalow, Bedly will be irreparably harmed for which no adequate remedy at law will exist.

60.     As a direct and proximate result of Karriem and Bungalow's actual and threatened conduct, Bedly has suffered damages in an amount yet to be determined.

### SECOND CAUSE OF ACTION
### (Tortious Interference with a Contract against Bungalow)

61.     Plaintiff alleges and incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

62.     The Contracts are valid and enforceable contracts between Karriem and Bedly.

63.     Bungalow is and has at all relevant times been aware of the existence and terms of the Contracts and Karriem's obligation to Bedly under the Contracts.

64.     Upon information and belief, Bungalow intentionally procured Karriem's breach of the Contracts by, among other things, encouraging, soliciting and inducing Karriem to violate his obligations under the contracts by disclosing of Bedly's confidential information and Trade Secrets.

65.     Upon information and belief, Bungalow benefited from wrongfully obtaining Karriem's breach of the Contracts.

66.     As a proximate result of Bungalow's tortious conduct, Bedly has suffered, and will continue to suffer, general and special damages in an amount to be proven at trial.

67.     Bungalow's tortious conduct was undertaken with malice and/or with wanton or reckless disregard to Bedly's interests, entitling Bedly to an award of punitive damages.

68.     Unless enjoined by this Court, further tortious interference by Bungalow threatens to and will cause irreparable injury to Bedly, and Bedly has no adequate or other remedy at law

for such acts and threatened acts.  Accordingly, Bedly is entitled to injunctive relief to enjoin Bungalow from continuing to interfere with Bedly's right to the protection of its confidential information and trade secrets.

**THIRD CAUSE OF ACTION**
**(Misappropriation of Trade Secrets under New York Common Law**
**against All Defendants)**

69.     Plaintiff alleges and incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

70.     Bedly possesses certain trade secrets and confidential information with which Karriem is familiar and which Karriem has a common law duty not to disclose.

71.     The Contracts between Karriem and Bedly also impose upon Karriem a Nondisclosure Covenant with respect to Bedly's trade secrets and otherwise confidential information.

72.     Upon information and belief, Karriem disclosed Bedly's trade secrets to Bungalow.

73.     Karriem's disclosure and Karriem and Bungalow's use of such information constitutes a misappropriation of Bedly's trade secrets in violation of New York common law.

74.     Upon information and belief, Karriem and Bungalow have and continue to possess and make use, for their own economic benefit, Bedly's trade secrets.

75.     As an unavoidable result of Karriem's and Bungalow's misappropriation of Bedly's trade secrets, Bedly has and will be irreparably harmed for which there is no adequate remedy at law.

76.     Karriem's and Bungalow's actions were willful and lasted for the duration of the relevant time periods.

77.     Karriem's and Bungalow's conduct was undertaken with malice and/or with wanton or reckless disregard to Bedly's interests, entitling Bedly to an award of punitive damages.

78.     Unless enjoined by this Court, further misappropriation by Karriem and Bungalow threatens to and will cause irreparable injury to Bedly, and Bedly has no adequate or other remedy at law for such acts and threated acts.  Accordingly, Bedly is entitled to injunctive relief to enjoin Karriem and Bungalow from continuing to benefit from the misappropriation of Bedly's trade secrets.

## FOURTH CAUSE OF ACTION
**(Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.* against All Defendants)**

79.     Plaintiff alleges and incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

80.     Bedly possesses and uses certain trade secrets and otherwise confidential information to provide services to their customers in interstate commerce.

81.     The DTSA specifically allows a private right of action for misappropriation of trade secrets.  A person misappropriates a trade secret by, among other things, using the trade secret despite knowing that the person who disclosed the trade was under a duty to maintain its secrecy or prohibited from making such use of the trade secret.

82.     Bedly is an owner of trade secrets, as defined by the DTSA, which have been willfully misappropriated by Karriem and Bungalow for their benefit and to the detriment of Bedly.

83.     Unless Karriem and Bungalow are restrained and enjoined from using Bedly's Trade Secrets, Bedly will suffer immediate and irreparable injury.  Bedly has no adequate remedy at law to protect against the illegal misappropriation and use of its Trade Secrets by

Karriem and Bungalow.  Injunctive relief is, therefore, necessary and appropriate to restrain the illegal misappropriation and use of Bedly's Trade Secrets pursuant to the DTSA.

84.     As a direct and proximate result of Karriem and Bungalow's actual and threatened misappropriation of Bedly's trade secrets and confidential information, Bedly has suffered damages in an amount yet to be determined.  In addition to the damage suffered by Bedly, Karriem and Bungalow have been unjustly enriched.

85.     Karriem and Bungalow's conduct has been willful and malicious, and Bedly is entitled to an award of exemplary damages from Karriem and Bungalow in such amounts as is necessary to deter Karriem and Bungalow from committing similar acts in the future

86.     Bedly is entitled to reasonable attorneys' fees pursuant to the DTSA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Bedly prays for the following relief:

A.     Preliminary and permanent injunctions against Defendants Karriem and Bungalow, as well as Bungalow's officers, owners, agents, successors, employees, representatives, affiliates, subsidiaries or parents, and any and all other persons acting in concert with any of the foregoing, from using Bedly's trade secret information;

B.     A judgment declaring that the practices complained of herein are unlawful and in violation of DTSA and New York Common Law;

C.     An order that Defendants Karriem and Bungalow return and/or permanently destroy all Bedly confidential information and Trade Secret information that is in their possession or control.

D.     An order that Defendants Karriem and Bungalow return all Bedly company property.

14

E.    Money damages;

F.    Punitive damages;

G.    Attorneys' fees;

H.    Costs; and

I.    Such further relief in law or equity as the Court deems just and proper.


## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury as to all issues so triable.

*        *        *

Dated: June 25, 2018
       New York, New York

Respectfully submitted,

THE OTTINGER FIRM, P.C.

By: _____
    Benjamin D. Weisenberg
    401 Park Avenue South
    New York, New York 10016
    Telephone: (212) 571-2000
    Fax: (212) 571-0505
    benjamin@ottingerlaw.com

    *COUNSEL FOR PLAINTIFF*